UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

PAUL MARCUS,

         Plaintiff,

       vs.

LINCOLNSHIRE MANAGEMENT, INC. and T.J. MALONEY,

         Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**COMPLAINT**

JURY TRIAL DEMANDED

        Plaintiff Paul Marcus, by his attorneys, Stillman & Friedman, P.C., for his Complaint against Defendants, alleges as follows:

NATURE OF THE ACTION

        1.    This action arises from Paul Marcus's investment of $1,500,000 in the common stock of Defendant Lincolnshire Management, Inc. ("LMI" or the "Company") in 1997, and his decision to retain his growing investment in the Company, which he was repeatedly told was increasing in value, while other shareholders cashed out. That decision was made in reliance on a written agreement reached between LMI and Mr. Marcus, and oral promises LMI made to Mr. Marcus giving him the right to sell or redeem his shares at any time -- at their then-current value -- on the same payment terms that were offered in 2001 to the other LMI shareholders (collectively, the "Agreements").

        2.    During meetings in March, April and May 2005, Mr. Marcus informed LMI that he was prepared to sell his shares or have them redeemed pursuant to the Agreements. On June 6, 2005 counsel for Mr. Marcus reiterated his interest in selling or redeeming his shares in a letter to LMI. LMI has refused to perform its obligations under the Agreements.

3. The Agreements are not the only commitments made to Mr. Marcus by LMI which the latter has now disavowed. Among the additional promises which LMI made, and which Mr. Marcus relied on when he purchased his LMI shares, was that the shareholders would receive regular distributions allocated in proportion to their equity ownership. Mr. Marcus has not received a distribution since 1998, while at the same time LMI's management, including defendant T.J. Maloney, has richly rewarded itself by paying as purported "bonuses" monies that should have been distributed to LMI shareholders in proportion to their equity ownership.

## PARTIES AND JURISDICTION

4. Plaintiff Paul Marcus is a resident of New Hampshire.

5. Plaintiff is a shareholder of LMI. In 1997 Plaintiff purchased 20 shares of LMI common stock for a purchase price of one million five-hundred thousand dollars. At the time these shares represented ten percent of LMI's outstanding stock. When other investors subsequently had an aggregate of 50% of the outstanding LMI stock redeemed, Plaintiff became the holder of 20% of LMI's outstanding stock.

6. On information and belief, Defendant LMI is a Delaware corporation with its principal place of business in the State and County of New York. LMI is engaged in the business of providing management services to specific investment funds pursuant to contracts between such investment funds and LMI.

7. On information and belief, Defendant T.J. Maloney ("Maloney") is a resident of Connecticut. Maloney is, and at all relevant times has been, the President of LMI, and also an LMI shareholder. Upon information and belief, in or before 1997, Maloney purchased 3.33% of LMI's outstanding stock with a promissory note. Upon information and

2

belief, Maloney subsequently acquired additional stock and is now the majority shareholder, CEO and Chairman of LMI.

8.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9.  Venue is proper within this district: pursuant to 28 U.S.C. § 1391(a), in that a substantial part of the events giving rise to this action occurred within this district; and pursuant to 28 U.S.C. § 1391(a) and (c) because defendant LMI resides in this district.

## FACTUAL ALLEGATIONS

**Plaintiff's Purchase of the LMI Shares**

10.  In a letter dated September 5, 1997, LMI offered Plaintiff the opportunity to purchase shares in the Company.

11.  Prior to that date, Plaintiff was an investor in an investment fund managed by LMI, but was not a shareholder of LMI itself.

12.  In a letter dated September 25, 1997, LMI made the following representations concerning the terms that would govern Plaintiff's purchase of LMI shares if Plaintiff chose to accept LMI's offer to make such purchase:

> (a)  If Plaintiff wished "at some future date" to sell, assign, transfer, or convey his LMI stock, LMI would "assist him in identifying an appropriate buyer." (¶ 1)
>
> (b)  For the prior four years LMI had valued its equity at $15 million and effectuated transactions at that valuation. LMI represented to Plaintiff that "the $15,000,000 valuation is not only reasonable but possibly on the low side." (¶ 2)

      (c)      As a Subchapter S corporation, LMI "distribute[s] all profits periodically to the stockholders." (¶ 2)

      (d)      LMI "generally make[s] distributions [to shareholders] on the basis of cash flow and availability, not profits." (¶ 3)

      (e)      As the owner of 10% of LMI's outstanding stock, Plaintiff would "receive 10% of all distributions from LMI as of the moment of [his] stock purchase." (¶ 9)

13.    Additional terms of Plaintiff's purchase of the LMI stock were contained in a Memorandum of Understanding ("MOU") entered into between LMI and Plaintiff. The MOU included the following terms:

- "The purchase price for the twenty (20) shares of LMI … representing 10% of the then outstanding common shares of LMI shall be $1,500,000." (¶ 1)

- The LMI shares "will be fully transferable and, if requested by Plaintiff, the officers and directors of LMI will use their best efforts to effectuate and facilitate a transfer of such shares to an appropriate purchaser at the then fair market value of said shares." (¶ 2)

- "Each shareholder of LMI will receive periodic distributions of profits from LMI in the exact proportion to their percentage shareholder interest in LMI. This would include Plaintiff as a ten percent shareholder." (¶ 6)

14.    Plaintiff purchased LMI stock in reliance on the representations set forth in ¶¶ 12 and 13 above, all of which became terms of the agreement by which his purchase was made (collectively, the "Written Agreement").

15.    In return for a payment of $1,500,000 by Plaintiff, LMI issued share certificate number 33 to Plaintiff representing 20 shares of LMI stock. At the time, these shares represented 10% of LMI stock.

4

16.     In 1997 and 1998, consistent with the terms of the Written Agreement, LMI made distributions to shareholders based on the Company's cash flow.

**LMI's Redemption Offers**

17.     On March 27, 2001, LMI sent a letter to Plaintiff and other stockholders offering to exchange the common stock owned by Plaintiff for 8% subordinated notes. The offer stated as follows: "For the purpose of the Offer, the common equity of the Company is being valued at $20,000,000. (At the time you acquired stock in the Company, its common equity was valued at $15,000,000.)"

18.     In a second letter dated March 27, 2001, LMI offered Plaintiff and other stockholders "the opportunity to exchange each share of Common Stock for a seven year 8% subordinated note in the aggregate principal amount of $100,000...."

19.     In a letter dated August 24, 2001, LMI again offered its stockholders "the opportunity to exchange each share of Common Stock for a seven year 8% subordinated note in the aggregate principal amount of $100,00, [sic]...."

20.     On information and belief, around this time LMI was in discussions with one or more potential investors who were interested in making a substantial investment in LMI. On information and belief, for purposes of this proposed investment, the equity in LMI was valued at $75 million or more.

21.     Four of LMI's minority shareholders – Robert C. Baker, Robert A. Belfer, William Mack and Joel Smilow -- chose to accept the Company's 2001 redemption offer. Each of these shareholders was a holder of 10% of LMI stock.

22.     Because Plaintiff owned 20 shares, if he had accepted the 2001 redemption offer, he would have received seven year 8% subordinated notes in the aggregate

5

principal amount of $2,000,000. However, Plaintiff chose not to accept the offer because of the representations by LMI to him described in ¶¶ 24-26 below.

23. In 2002, two other shareholders, Thomas Israel and Ed Willet, redeemed the aggregate 10% of LMI stock that they owned. On information and belief, they did so on the same terms offered to shareholders in 2001.

**Representations by LMI to Plaintiff Regarding the Redemption of His Shares**

24. On several occasions after Plaintiff purchased his stock in 1997, LMI represented to him that he would have the right to sell his shares to a third party, or have them redeemed by LMI itself, on terms no less favorable than those obtained at any time by any other shareholders.

25. Specifically, at the time of the redemptions by other shareholders in 2001 and 2002 and thereafter, LMI agreed with Plaintiff that he could sell his shares or have them redeemed at any future time, at their then-current value, on the same payment terms as those afforded to other shareholders. Subsequent to the 2001 Redemption Offers, LMI represented to Plaintiff that the equity in the Company was worth more than at the time of the 2001 offer; that its value was going to increase further; and that in return for Plaintiff's patience and loyalty to the company, he would receive a higher return on his investment if he chose to hold his LMI stock while other shareholders were redeeming their own shares. LMI also agreed that at Plaintiff's option, interest payments on any redemption by him would be retroactive to 2002, even if the redemption was made thereafter. These representations were reiterated several times after the 2001 and 2002 redemptions by other shareholders.

26. In reliance on the aforesaid representations, Plaintiff continued to hold his shares. The agreement by Plaintiff to hold his shares constituted the consideration for the

representations by LMI described in ¶ 25 above, and resulted in the formation of a binding contract between Plaintiff and LMI (the "Oral Agreement").

**Plaintiff's Decision to Sell His LMI Shares**

27. During 2003 or 2004, LMI represented to Plaintiff that the value of his 10% interest in the Company had grown to between $6 million and $7.5 million and could continue to grow to as much as $10 million.

28. On information and belief, the total equity in LMI is now worth at least $75 million.

29. Accordingly, since Plaintiff's 10% share of a $20 million company could have been redeemed in 2001 for $2 million, he is now entitled under the Oral Agreement, to redeem his shares for no less than $7.5 million. This amount is consistent with both LMI's current value (as alleged in ¶ 28 above), and with LMI's statements about the value of Plaintiff's shares in 2003 or 2004 (as alleged in ¶ 27 above).

30. During meetings in March, April and May 2005, Plaintiff informed LMI that he wanted to sell his shares or have them redeemed at their 2005 value.

31. LMI has refused to perform its contractual obligation to find a purchaser for, or redeem, Plaintiff's shares at their current value. Instead, LMI has offered to purchase the shares owned by Plaintiff for his original investment of $1,500,000. This offer is inconsistent with LMI's contractual obligations to either use its best efforts to effectuate and facilitate a sale to a purchaser, or in the alternative, to redeem the shares itself, at a price reflecting the current value of the shares.

### FIRST CLAIM FOR RELIEF
(Specific Performance of Written Agreement,
or in the Alternative, Breach of Contract)

32. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-31 above as though fully set forth herein.

33. As alleged above, LMI agreed in the Written Agreement that if and when Plaintiff wished to sell his shares, LMI would use its best efforts to effectuate and facilitate a transfer of such shares to an appropriate purchaser at the then fair market value of said shares.

34. Plaintiff advised LMI in March 2005 that he wished to sell his shares.

35. On information and belief, LMI failed to use its best efforts to effectuate and facilitate a sale of Plaintiff's shares at their fair market value. Instead, LMI merely offered Plaintiff a return of his original investment of $1,500,000 in exchange for his shares.

36. LMI thus breached its contractual obligation to use its best efforts to effectuate and facilitate a sale of Plaintiff's shares at fair market value.

37. Plaintiff seeks specific performance of LMI's agreement to use its best efforts to effectuate and facilitate a sale of Plaintiff's shares to a purchaser at fair market value, or, in the alternative, damages for breach of that Agreement by LMI.

### SECOND CLAIM FOR RELIEF
(Specific Performance of Oral Agreement,
or in the Alternative, Breach of Contract)

38. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-37 above as though fully set forth herein.

39. As alleged above, LMI agreed in the Oral Agreement that Plaintiff, like the other investors who redeemed their shares in 2001 and 2002, could redeem his shares at their value at the time of such redemption. As alleged above, the term of the Oral Agreement was confirmed by statements made by LMI to Plaintiff on several occasions.

40. Plaintiff retained his LMI shares from 2001 through 2005 in reliance on the Oral Agreement.

41. On information and belief, from the time that other investors sold their shares to the LMI treasury in 2001-02 until 2005, the value of LMI had greatly increased.

42. LMI has refused, and continues to refuse, to redeem Plaintiff's shares for a price equal to their current value.

43. Plaintiff seeks specific performance of LMI's agreement to redeem his shares at their current value, or, in the alternative, damages for breach of that Agreement.

### THIRD CLAIM FOR RELIEF
**(Breach of Written Agreement)**

44. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-43 above as though fully set forth herein.

45. As alleged above, pursuant to the Written Agreement by which Plaintiff purchased his shares, LMI agreed to make "periodic distributions of profits and cash flow from LMI in the exact proportion to their percentage shareholder interest in LMI."

46. Although obligated to make periodic cash distributions to shareholders in proportion to their holdings, LMI has not made a distribution to Plaintiff since 1998.

47. On information and belief, from time to time since 1998, the amounts of LMI's available funds have been such that distributions to shareholders would have been appropriate and in keeping with both LMI policy and the Written Agreement between LMI and Plaintiff.

48. Plaintiff seeks damages for breach of LMI's agreement to make periodic, proportional distributions to shareholders of profits and cash flow in the amount that should have been distributed to shareholders instead of paid to LMI management as bonuses. To determine

this amount, Plaintiff demands an accounting to determine when shareholder distributions would have been appropriate and the amounts of such distributions.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty by Maloney)**

49. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-48 above as though fully set forth herein.

50. As alleged in connection with the Third Claim for Relief, LMI had a contractual obligation to make periodic proportional distributions to shareholders from profits and cash flow.

51. On information and belief, Maloney, as president of LMI, acted in his own self-interest by causing significant distributions to be made to LMI management in the form of bonuses, while failing to make any distributions to shareholders.

52. By virtue of such conduct, Maloney breached his fiduciary duty as an officer of LMI to Plaintiff as an LMI shareholder.

53. Plaintiff seeks damages for Maloney's breach of fiduciary duty in the amount that should have been distributed to shareholders instead of paid to management as bonuses. To determine this amount, Plaintiff demands an accounting to determine when shareholder distributions would have been appropriate and the amounts of such distributions.

**FIFTH CLAIM FOR RELIEF**
**(Breach of Implied Covenant of Good Faith and Fair Dealing by LMI)**

54. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-53 above as though fully set forth herein.

55. As alleged in the Third and Fourth Claims for Relief, LMI had a contractual obligation to make periodic, proportional distributions to shareholders from profits.

56. The use of LMI's available cash to enable management to receive enhanced bonuses while shareholders received no distributions is a violation of the implied covenant of good faith and fair dealing inherent in the parties' agreement.

57. Plaintiff seeks damages for LMI's breach of the covenant of good faith and fair dealing in the amount that should have been distributed to shareholders instead of paid as such bonuses. To determine that amount, Plaintiff demands an accounting to determine when shareholder distributions would have been appropriate and the amounts of such distributions.

## SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty by Maloney)

58. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-57 above as though fully set forth herein.

59. As alleged in the Fifth Claim for Relief, LMI breached the implied covenant of good faith and fair dealing inherent in its agreement to make periodic, proportional distributions to shareholders.

60. On information and belief, Maloney, as president of LMI, caused LMI to breach its covenant of good faith and fair dealing inherent in its contract with Plaintiff by causing significant distributions to be made to LMI management in the form of bonuses, while failing to make any distributions to shareholders.

61. As an officer of LMI, Maloney therefore breached his fiduciary duty to Plaintiff as a shareholder.

62. Plaintiff seeks damages for Maloney's breach of fiduciary duty in the amount that should have been distributed to shareholders instead of paid as bonuses to management. To determine that amount, Plaintiff demands an accounting to determine when shareholder distributions would have been appropriate and the amounts of such distributions.

**SEVENTH CLAIM FOR RELIEF**
**(Breach of Fiduciary Duty by Maloney)**

63. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-62 above as though fully set forth herein.

64. On information and belief, Maloney became a majority shareholder of LMI by acquiring from LMI's treasury shares that had previously been redeemed from former LMI investors.

65. On information and belief, Maloney acquired the former investors' shares by giving the Company lesser consideration, or giving consideration on terms less favorable to LMI, than could have been achieved in an arm's length negotiation.

66. The opportunity to purchase a proportionate amount of the LMI treasury stock on the same terms as available to Maloney was not offered to Plaintiff.

67. When Maloney acquired the shares from LMI's treasury, Plaintiff's ownership interest in LMI -- which had grown to 20% when the shares were redeemed -- was reduced back to 10%.

68. By virtue of the conduct described above, Maloney breached his fiduciary duty to Plaintiff, a minority shareholder of LMI.

69. Accordingly, Plaintiff seeks rescission of any agreement by which Maloney acquired the LMI treasury shares; or, in the alternative, a constructive trust on the shares Maloney purchased from the LMI treasury; or in the alternative, an accounting and money damages equal to the difference in the redemption price of Plaintiff's shares at their present value and the value they would have had if an arm's length transaction had been effected instead of the sale of the LMI treasury shares to Maloney.

## EIGHTH CLAIM FOR RELIEF
(Common Law Dissolution)

70. Plaintiff repeats and re-alleges the allegations of ¶¶ 1-68 above as though fully set forth herein.

71. On information and belief, as LMI's president, CEO, Chairman and majority shareholder at various relevant times, Maloney has had, and now has, exclusive control and management of LMI.

72. As alleged above, Maloney has breached his fiduciary duty to Plaintiff by:

(a) causing LMI's breaches of its written and oral contracts with Plaintiff;

(b) causing LMI's breach of the implied covenant of good faith and fair dealing with Plaintiff;

(c) causing LMI to divert assets away from shareholders for the personal benefit of himself and other members of management; and

(d) on information and belief, acquiring a majority share of LMI stock in return for lesser consideration, or on terms less favorable to LMI, than could have been achieved in an arm's length negotiation.

73. Plaintiff therefore seeks a common law dissolution of LMI.

WHEREFORE, Plaintiffs respectfully request that the Court enter a judgment against Defendants as follows:

a. on the First and Second Claims for Relief, for specific performance of the oral and written agreements, or, in the alternative, damages for breach of contract in an amount

to be determined by the trier of fact, but in no event less than $7,500,000, together with interest therein;

    b.  on the Third, Fourth, Fifth and Sixth Claims for Relief, for an accounting related to LMI's distributions, and damages in an amount to be determined by the trier of fact, but in no event less than 10 percent of all management bonuses since shareholder distributions ceased in 1998, together with interest therein;

    c.  on the Seventh Claim for Relief, for rescission, or, in the alternative, constructive trust, or, in the alternative, damages in an amount to be determined by the trier of fact, but in no event less than $7,500,000, together with interest therein;

    d.  on the Eighth Claim for Relief, for common law dissolution of LMI;

    e.  for an injunction enjoining further breaches of fiduciary duty by defendant Maloney;

    f.  for Plaintiff's costs, disbursements, and attorney's fees incurred in connection with this action; and

    g.  for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 11, 2005

                                Respectfully submitted,

                                STILLMAN & FRIEDMAN, P.C.

                                By:_____
                                    Julian W. Friedman (JF 6010)
                                    Karin Klapper Orenstein (KO 1274)
                                    James A. Mitchell (JM 4150)
                                425 Park Avenue
                                New York, New York 10022
                                Tel. (212) 223-0200
                                Fax (212) 223-1942

                                Attorneys for Plaintiff Paul Marcus