UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

PAUL MARCUS,

                   Plaintiff,

         -against-                                05 Civ. 7127 (LAK)

LINCOLNSHIRE MANAGEMENT, INC. and
T.J. MALONEY,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

Julian W. Friedman
Karin Klapper Orenstein
James A. Mitchell
STILLMAN & FRIEDMAN, P.C.
*Attorneys for Plaintiff*

Jennifer Selendy
Gregory T. Heyman
KIRKLAND & ELLIS LPP
*Attorneys for Defendant Lincolnshire Management, Inc.*

Glen A. Silverstein
LEADER & BERKON LLP
*Attorneys for Defendant T.J. Maloney*

LEWIS A. KAPLAN, *District Judge.*

        Law reports are filled with the oft-told tale of the investor who, attracted by an

enthusiastic promoter, makes a minority investment in a closely-held corporation to find out only later that the promoter or its successors have profited greatly while the investor is stuck with an illiquid, unproductive holding.  This is another case born of such circumstances.  It is before the Court on defendants' motion to dismiss the complaint.

### Facts

The Court assumes the truth of the facts alleged in the complaint for purposes of the motion, taking into account certain documents implicitly incorporated by reference in that pleading.

*The Investment and the Related Agreements*

In 1997, plaintiff Paul Marcus entered into a subscription agreement and memorandum of understanding (collectively, the "Agreement") with defendant Lincolnshire Management, Inc. ("LMI"), a Delaware corporation then run by Steven J. Kumble, pursuant to which he purchased 20 shares (10 percent) of the common stock of LMI for $1.5 million.  The Agreement recited that it was "the entire agreement between us regarding LMI equity," that it could "be modified or amended [only] by a writing signed by both," and that it would be governed by New York law.[1]  The Agreement contained the following additional provisions:

"2.      *   *   * Subject to the Securities Act of 1933, such shares will by fully

---

[1] Heyman Decl. Ex. A, at 2.

As the complaint relies upon the Agreement, it is appropriate to consider it on this motion notwithstanding plaintiff's failure to attach the Agreement to the pleading.  *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 152 (2d Cir. 2002); *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47-48 (2d Cir.1991); *In re Salomon Analyst Level 3 Litig.,* 350 F.Supp.2d 477, 487 (S.D.N.Y. 2004).

transferable and, if requested by Marcus, the officer and directors of LMI will use their best efforts to effectuate and facilitate a transfer of such shares to an appropriate purchaser at the ten fair market value of said shares.

\* \* \*

"6. Each shareholder of LMI will receive periodic distributions of profits from LMI in the exact proportion to their percentage shareholder interest in LMI. This would include Marcus as a ten percent shareholder."[2]

*The Exchange Offer*

Beginning in March and continuing until at least August 2001, LMI offered plaintiff and other stockholders the opportunity to exchange each share of common stock for a seven year 8 percent subordinated note in the aggregate principal amount of $100,000.[3] Four of the minority shareholders – each a holder of 10 percent, or 20 shares – accepted the offer.[4] LMI redeemed the shares of two additional holders of 10 percent of the shares on the same terms during the following year.[5]

*The Alleged Representations to Marcus in Connection with the Exchange Offer*

At the time of the exchange offer and thereafter, LMI is said to have agreed with

---

[2] *Id.* Agreement (Memorandum of Understanding) at 1.

[3] Cpt ¶¶ 17-19.

[4] *Id.* ¶20.

[5] *Id.* ¶ 23.

At the conclusion of these transactions, it appears, there were 100 LMI shares outstanding of which Marcus owned 20, or 20 percent. *See id.* ¶ 67.

Marcus that, if he did not exchange his shares, he could sell his shares or have them redeemed at any future time, at their then current value, on the same payment terms as were afforded to other shareholders. In reliance on this agreement and representations not material to this motion, plaintiff continued to hold his shares rather than accepting the exchange offer.[6]

*Plaintiff's Desire to Dispose of His Shares*

During the period March through May 2005, Marcus advised LMI that he wanted to sell his shares or have them redeemed at their 2005 value. LMI, however, refused to find a purchaser or redeem Marcus' stock. It offered instead to buy him out for $1.5 million.[7]

*The Complaint*

Plaintiff claims that the Agreement and the alleged oral agreement at or about the time of the exchange offer (the "Second Agreement") to redeem his shares at any time at their then-current value are separate and independent agreements. Based in part on this premise, his complaint asserts eight claims for relief against LMI and its current chairman and majority shareholders, T.J. Maloney:

- Breach of the Agreement by LMI's failure in and after March 2005 to use its best efforts to effectuate and facilitate a sale of Marcus' shares.[8]

---

[6] *Id.* ¶¶ 24-26.

[7] *Id.* ¶ 30.

[8] *Id.* ¶¶ 32-37.

- Breach of the Second Agreement by LMI's failure to redeem his shares in 2005 at their then-current value.[9]

- Breach of the Agreement by LMI's failure to make periodic distributions to shareholders in that LMI has made no such distributions since 1998 despite the fact that such distributions "would have been appropriate."[10]

- Breach of fiduciary duty by Maloney in that he caused bonuses to be paid to management instead of making distributions to Marcus and other shareholders.[11]

- Breach of implied covenant of good faith and fair dealing by LMI by its use of available cash to pay bonuses to management instead of making distributions to shareholders.[12]

- Breach of fiduciary duty by Maloney by causing LMI to breach its covenant of good faith and fair dealing through its use of available cash for bonuses rather than distributions to shareholders.[13]

- Breach of fiduciary duty by Maloney by acquiring treasury shares from LMI for inadequate consideration, which diluted plaintiff's interest back from the

---

[9] *Id.* ¶¶ 38-43.

[10] *Id.* ¶¶ 44-48.

[11] *Id.* ¶¶ 49-53.

[12] *Id.* ¶¶ 54-57.

[13] *Id.* ¶¶ 58-62.

20 percent level it had reached after the exchange offer and other redemptions to 10 percent.[14]

- Common law dissolution of LMI in light of Maloney's breaches of fiduciary duty and complete control over the company, to the detriment of Marcus and other shareholders, by virtue of Maloney's majority ownership.[15]

Marcus seeks specific performance of the Agreement and the Second Agreement or, alternatively, damages.

## Discussion

### *The Best Efforts Contract Claim*

Defendants seek dismissal of the first claim for relief – that for LMI's alleged breach of its obligation to use its "best efforts to effectuate and facilitate a transfer of [Marcus'] shares to an appropriate purchaser at the[ir] then fair market value" if so requested – on the alternative grounds that the complaint fails to allege a request by Marcus and, in any case, the claim is moot because LMI advised Marcus on September 14, 2005 that it is ready, willing and able to comply with the best efforts obligation. Although it appears most unlikely that Marcus will obtain substantial relief on this claim, even if he prevails on the merits, the motion in this respect borders on the frivolous.

First, while it is true that LMI's best efforts obligation would be triggered only by a request from Marcus and that the complaint does not allege in so many words that Marcus made a

---

[14]

    *Id.* ¶¶ 63-69.

[15]

    *Id.* ¶¶ 70-73.

request, it does assert that Marcus "advised LMI in March 2005 that he wished to sell his shares."[16] As this claim is subject only to the notice pleading requirements of Rule 8, and not to the particularity requirement of Rule 9(b), it cannot properly be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[17] As Marcus patently could prove a request that LMI use its best efforts to "effectuate and facilitate" a sale of his shares, this attack on the claim is baseless.

So too is the alternative attack. Marcus seeks specific performance of the best efforts clause or, in the alternative, damages.[18] A present willingness by LMI to perform might well moot the claim for specific performance. It would not moot the alternative claim for damages. However unlikely, Marcus conceivably might prove a request months ago, the loss of a sale during the interim by reason of a breach, and damages.

*Breach of the Alleged Obligation to Redeem*

Marcus' second claim for relief alleges breach of the Second Agreement in that LMI failed to discharge its supposed obligation to redeem his shares at fair market value. Defendants seek dismissal on the ground that proof of such an oral agreement is foreclosed by the Agreement. They contend that the Agreement is a completely integrated contract, that it bars modification or amendment except by a writing signed by both sides, and that the Second Agreement modified the

---

[16]     Cpt ¶ 34.

[17]     *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

[18]     Cpt ¶ 37.

Agreement and therefore may not be proved.

Defendants' argument depends entirely on the proposition that the Second Agreement is a modification of or an amendment to the Agreement.[19] This in turn rests on the premise that the terms of the Second Agreement "flatly contradict the express terms of [the Agreement] with respect to the transfer of Marcus's shares."[20]

The accuracy of defendants' premise is not evident. The Agreement obligated LMI, if requested, to use its "best efforts to effectuate and facilitate a transfer" of Marcus' shares to "an appropriate purchaser." The Second Agreement obligated it, arguably in consideration of Marcus' agreement not to avail himself of the exchange offer, to redeem his shares at their then-current value. Thus, the Second Agreement does not appear to have varied or contradicted the terms of the Agreement. Rather, LMI allegedly assumed an additional obligation – redemption on request – in consideration of Marcus' agreement not to avail himself of the exchange offer.[21] At this early stage, the Court cannot say that Marcus could prove no set of facts under which he could prevail on the theory that the Second Agreement was independent of the Agreement rather than a modification or amendment thereof.

*Claims Relating to Distributions*

---

[19]

As the parties agree, the Court considers the Agreement *in pari materia.*

[20]

Def. Reply Mem. 2.

[21]

It is entirely conceivable that LMI preferred to have Marcus' investment in the form of equity rather than to issue $2 million in additional debt pursuant to the exchange offer, particularly as the debt it offered in the exchange offer was at 8 percent ($160,000 per annum) and it was paying no dividends on the equity.

Marcus' claims relating to LMI's failure to make distributions to shareholders take several forms. The third claim for relief asserts that this failure breached its obligation under the Agreement to make "periodic distributions of profits and cash flow from LMI in the exact proportion to their percentage shareholder interest in LMI." The fourth, fifth and sixth contend that LMI made distributions to management in the form of bonuses while failing to cause LMI to make distributions to shareholders. This, the complaint alleges, breached Maloney's fiduciary duties on two theories and LMI's implied covenant of good faith and fair dealing under the Agreement.

### 1.  *Breach of Contract by LMI - Third and Fifth Claims*

Marcus' third claim for relief seeks damages for LMI's alleged breach of its obligation to make "periodic cash distributions to shareholders in proportion to their holdings" notwithstanding the fact that "distributions to shareholders would have been appropriate." The fifth claim makes a related argument, contending that LMI breached the implied covenant of good faith and fair dealing, in substance by overpaying management (which would have reduced profits) instead of distributing the money to shareholders. Defendants seek dismissal on the ground that LMI's ability to pay dividends is conditioned upon the existence of profits and that Marcus has failed to allege that any profits existed.

This branch of the motion is without merit. The Court assumes, without deciding, that defendants are right in asserting that LMI could pay dividends only if there were profits. They are wrong, however, in contending that Marcus' failure to allege in so many words that there were profits renders these claims insufficient. Certainly it cannot be said that he could "prove no set of

facts in support of his claim which would entitle him to relief."[22]  Indeed, the existence of profits arguably would be a fair inference from the allegation that "LMI's available funds have been such that distributions to shareholders would have been appropriate."[23]

2.      *Breach of Fiduciary Duty by Maloney – The Fourth, Sixth and Seventh Claims*

The fourth and sixth claims both rest on the assertion that Maloney, who was self-interested, caused LMI to overpay management instead of distributing funds to the shareholders.  The fourth contends that this directly breached his fiduciary duty.  The sixth recasts the claim by asserting that the same conduct caused LMI to breach the implied covenant of good faith and fair dealing and thus breached Maloney's duty.  The seventh differs, alleging that Maloney personally acquired shares from LMI's treasury at an inadequate price.  Defendants argue that these fiduciary duty claims are derivative in nature and that Marcus therefore lacks standing to pursue them.

In *Tooley v. Donaldson, Lufkin & Jenrette, Inc.,*[24] the Delaware Supreme Court recently refined the standard dividing direct from derivative claims.  The determination turns "solely" on a two-fold inquiry: "(1) who suffered the alleged harm? (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy? (the corporation or the stockholders, individually?"[25]  In analyzing the first prong, moreover, the

---

[22]

     *Conley,* 355 U.S. at 45-46.

[23]

     Cpt ¶ 47.

[24]

     845 A.2d 1031 (Del. 2004).

[25]

     *Id.* at 1033.

court cited approvingly *Agostino v. Hicks,*[26] where the court characterized the relevant inquiry as "[l]ooking at the body of the complaint and considering the nature of the wrong alleged and the relief requested, has the plaintiff demonstrated that he or she can prevail without showing an injury to the corporation?"[27]

A *sine qua non* of both of plaintiff's breach of fiduciary duty claims relating to distributions is the assertion that Maloney breached his fiduciary duty by causing LMI to pay excessive compensation to management. This is a classic claim of corporate waste, and it is derivative because the harm alleged is to the corporation and any recovery would belong to it, not to the shareholders individually.[28]

Marcus seeks to avoid this conclusion on the theory that he and other stockholders would have received distributions had Maloney not overpaid the management. But this facile response is entirely unpersuasive. In order to recover here, plaintiff first would have to prove that there was corporate waste. The corporation then would have to recover any excess compensation. Then plaintiff would have to prove the entirely separate claim that the corporation is or was obliged to distribute the funds recovered to the stockholders. As Marcus could obtain no relief on these claims without showing an injury to the corporation, the claim is derivative, even without

---

[26]

Civ. A. 20020-NC, 2004 WL 443987 (Del. Ch. Mar. 11, 2004).

[27]

*Id.* at *7.

[28]

*See Winston v. Mandor,* 710 A.2d 835, 845 (Del. Ch. 1997) ("The crux of these allegations is that Milestone overpaid for the Concord assets. This alleges waste of corporate assets, and as such is a classic derivative claim."); *see also Elster v. American Airlines, Inc.,* 100 A.2d 219, 222 (Del. Ch. 1953) (challenge to grant and exercise of stock options seeking relief for alleged dilution of plaintiff's stock essentially a claim of mismanagement and therefore derivative).

considering defendants' alternative argument for the same result.

The analysis of Marcus' claim that Maloney purchased treasury shares for inadequate consideration is similar. Quite plainly, Marcus could not prevail without establishing that the corporation was injured because it parted with shares for less than their real value. The fact that Marcus alleges that he was injured personally as well, even if true, do not save the claim.

*Dissolution*

Marcus' final claim is for common law dissolution.

LMI is a Delaware corporation. The parties agree that there is no common law dissolution under Delaware law, the remedy being exclusively statutory. The parties agree that New York law provides for common law dissolution in certain circumstances. The initial question therefore is whether the dissolution claim is governed by Delaware or New York law.

As this is a diversity case, the choice of law is controlled by New York choice of law principles.[29] And New York adheres to the internal affairs doctrine pursuant to which the internal affairs of a corporation are governed by the law of the state of its incorporation.[30] No "affair" is more "internal" than a claim that could result in the termination of the existence of the corporation. No state has a greater interest in that question than the state of incorporation. Accordingly, the complaint fails to state a claim upon which dissolution may be granted.

---

[29]

*Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941).

[30]

*E.g., Wall Street Systems, Inc. v. Lemence,* No. 04 Civ. 5299 (JSR), 2005 WL 2143330, at *8 (S.D.N.Y. Sept. 2, 2005); *Hart v. General Motors Corp.,* 129 A.D.2d 179, 517 N.Y.S.2d 490 (1st Dept.), *leave to appeal denied,* 70 N.Y.2d 608, 521 N.Y.S.2d 225 (1987).

*Conclusion*

For the foregoing reasons, defendants' motion to dismiss the complaint for failure to state a claim is granted to the extent that the fourth, sixth, seventh and eighth claims for relief are dismissed and otherwise denied.

SO ORDERED.

Dated: January 13, 2006

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)